UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JENNIFER J. HYCOOP,

                 Plaintiff,                              Case No.  1:15-CV-795

v.

                                             HON. PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY,

                 Defendant,

_____/

## OPINION

        This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Jennifer Hycoop seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## STANDARD OF REVIEW

        The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.

*See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was forty-three years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.55, 138.) She obtained a GED, took some online college classes with the University of Phoenix, and was previously employed as a newspaper carrier, injection molding tender, and instrument assembler. (PageID.80, 110, 120–122.) Plaintiff filed for benefits on October 24, 2012, alleging that she had been disabled since December 1, 2010, due to chronic pancreatitis, anxiety, depression, and chronic migraines. (PageID.138, 150, 224–234.) Plaintiff's applications were denied on March 4, 2013, after which time she requested a hearing before an ALJ. (PageID.167–189.) On November 19, 2013, Plaintiff

appeared with her counsel before ALJ Michael Condon for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.74–133.) In a written decision dated February 7, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.55–73.) On April 30, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.40–45.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Condon determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (PageID.60.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) osteoarthritis of the hips bilaterally; (2) obstructive sleep apnea; (3) depressive disorder (not otherwise specified); (4) generalized anxiety disorder/panic disorder; (5) pancreatic divisum (with nausea and abdominal pain but without agenesis); (6) migraines; (7) peripheral neuropathy; and (8) mild degenerative disc disease of the thoracic and lumbar spine. (PageID.60–61.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.61–64.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She can lift and/or carry up to ten pounds frequently; stand and/or walk four hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally climb, balance, stoop, and crouch; and never kneel or crawl. She must be allowed to sit and/or stand as needed. She can have no exposure to workplace hazards, including unprotected heights and dangerous moving machinery; can have no operation of commercial vehicles; and can have no concentrated exposure to cold temperatures. She is limited to doing simple, routine work on a sustained basis.

(PageID.64–65.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform

4

any of her past relevant work.  (PageID.67–68.)  At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964.  The VE testified that Plaintiff could perform the following work: production inspector (1,100 regional jobs[2] and 40,000 national jobs), bench assembler (2,000 regional jobs and 35,000 national jobs), and surveillance system monitor (1,600 regional jobs and 42,000 national jobs).  (PageID.125–127.)  Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (PageID.69.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from December 1, 2010, through February 7, 2014.  (PageID.69.)

## DISCUSSION

### 1.    The ALJ Properly Accounted For Plaintiff's Moderate Limitations in Pace.

Plaintiff first argues that while the ALJ found that Plaintiff had moderate difficulties in concentration, persistence or pace at step three of the sequential evaluation, the ALJ failed to account for this limitation later in the evaluation when assigning Plaintiff an RFC that, in relevant part, only included a limitation for "simple, routine work on a sustained basis."  (PageID.889–892.)  The Court disagrees.

Plaintiff relies on *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010) to support her claim that the ALJ's RFC decision is deficient.  In *Ealy*, the Sixth Circuit rejected an ALJ's "streamlined" hypothetical question to a VE which limited the claimant "to simple, repetitive tasks and instructions in non-public settings," where the ALJ found that the claimant's RFC limited the claimant's

---

[2]At the administrative hearing, the VE defined regional jobs as those jobs existing in the lower peninsula of the state of Michigan.  (PageID.120.)

"ability to sustain attention to complete simple repetitive tasks to [two-hour] segments over an eight-hour day where speed was not critical." *Id.* at 516.  Given the rather specific RFC assessment, the *Ealy* court rejected that ALJ's hypothetical question to the VE because it omitted "speed—and pace—based restrictions." *Id.*  The present case is distinguishable from *Ealy*.  Unlike *Ealy*, the ALJ did not find that Plaintiff was subject to a specific speed and pace restriction (such as working two hour segments over an eight-hour day where speed was not critical).  Rather, the ALJ found that Plaintiff had only moderate limitations with regard to concentration, persistence or pace.  (PageID.64.)  Such limitations could be accommodated by performing "simple, routine work."  (PageID.65.)  *Smith v. Halter*, 307 F.3d 377, 378–79 (6th Cir. 2001).

Moreover, contrary to Plaintiff's argument, the *Ealy* decision does not stand for the proposition that a finding that a claimant is limited to "simple work" is somehow legally deficient. *See, e.g., Clayton v. Astrue*, 2013 WL 427407 at *7 (S.D. Ohio, Feb. 1, 2013) (distinguishing *Ealy* and limiting it to its facts); *Steed v. Astrue*, 2012 WL 1097003 at *9 (N.D. Ohio, Mar. 20, 2012) (same); *Alonso v. Comm'r of Soc. Sec.*, 2011 WL 4526676 at *11 (W.D. Mich., Aug. 8, 2011) (same); *McGaha v. Astrue*, 2012 WL 762176 at *5 (E.D. Ky., Mar. 7, 2012) (same).  Rather, *Ealy* simply reiterates the long-held notion that if the ALJ relies on the response to a hypothetical question, such question must accurately portray the claimant's limitations and be consistent with the ALJ's express findings. *See, e.g., Clayton*, 2013 WL 427407 at *7; *Steed*, 2012 WL 1097003 at *9; *Alonso*, 2011 WL 4526676 at *11; *McGaha*, 2012 WL 762176 at *5.

At bottom, Plaintiff's claim conflates the analysis conducted at separate points of the ALJ's decision.  At step three in the sequential analysis, the ALJ considered whether Plaintiff satisfied the

"paragraph B" criteria of listings 12.04 and 12.06.  (PageID.63.)  As the ALJ stated:

> To satisfy the "paragraph B" criteria . . . the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(PageID.63.)  The ALJ accordingly found, Plaintiff had a moderate limitation in concentration, persistence, or pace.  Here, Plaintiff is attempting to take a portion of the ALJ's step three finding out of context and substitute it for the ALJ's factual finding at step four.  It is well established, however, that the paragraph B criteria used in determining whether a claimant meets or equals a listed impairment "are not an RFC assessment," but rather are "used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  *See* SSR 96–8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).  RFC is a more detailed assessment made by "itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listing of Impairments."  *Id.* at *4; *see also Collier v. Comm'r of Soc. Sec.*, No. 1:11–cv–1144, 2013 WL 4539631, at *5–6 (W.D. Mich. Aug. 27, 2013).  The ALJ's findings at earlier steps in the sequential analysis do not undermine his RFC determination.  *See Pinkard v. Comm'r of Soc. Sec.*, No. 1:13–cv–1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) (making a similar analysis).  Accordingly, the ALJ was not required to account for his findings at step three in his step four analysis, and Plaintiff's claim of error will be denied.

> **2.     The ALJ's RFC Determination is Supported by Substantial Evidence**.

Next, Plaintiff argues the ALJ's RFC finding is deficient for failing to include limitations

accounting for her diarrhea, vomiting, nausea, and abdominal pain.[3]  (PageID.892.)  The Court disagrees.

A claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96–8P, 1996 WL 374184 at *1 (S.S.A. July 2, 1996); *see also Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 116 (6th Cir. 2010).  RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).  At this point, the burden remains on Plaintiff to demonstrate a disability.  42 U.S.C. § 423(d)(5)(A).  In support of this claim, Plaintiff points to several records in which Plaintiff's physicians provided diagnoses that Plaintiff suffered from diarrhea, nausea, and abdominal pain.  (PageID.892.)  Plaintiff also points to the opinion from her treating physician, Dr. Jesse Duranceau of Borgess Internal Medicine.  (PageID.892.)

A.    *Treatment Notes*

Plaintiff begins by citing to numerous treatment notes which diagnose her complaints of diarrhea, vomiting, nausea, and abdominal pain.  (PageID.892.)  Plaintiff's reliance on these diagnoses, however, do not satisfy her burden.  *See McKenzie v. Comm'r of Soc Sec.*, No. 99–3400, 2000 WL 687680, at *5 (6th Cir. May 19, 2000) ("the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual") (citing *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988)).  Plaintiff had the burden of showing specifically how these conditions, in combination with other impairments, limited her ability to a degree inconsistent with

---

[3]Plaintiff further claims the ALJ erred in classifying her treatment for these conditions as "conservative" and failing to properly consider the side effects of Plaintiff's medications. (PageID.893–894.)  These allegations are addressed below in Plaintiff's credibility claim of error.

the ALJ's RFC determination.  As the notes cited by Plaintiff merely show evidence of a condition, the Court finds Plaintiff has failed to satisfy her burden here.

      B.     *Dr. Duranceau*

Plaintiff also relies on several opinions from her treating physician, Dr. Jesse Duranceau, D.O.  Some of those opinions were in response to requests from the University of Phoenix, where Plaintiff was taking online classes.  In response to those requests, Dr. Duranceau opined that Plaintiff was disabled. Initially Dr. Duranceau opined that Plaintiff was temporarily disabled from October 19, 2012, through January 1, 2013.  (PageID.840.)  On January, 23, 2013, Dr. Duranceau extended Plaintiff's disabled status through March 31, 2013.  (PageID.844)  On February 20, 2013, Dr. Duranceau again extended Plaintiff's disabled status through April 20, 2013.  (PageID.845.)  Finally on May 10, 2013, Dr. Duranceau opined that Plaintiff was under a permanent disability.  (PageID.847.)

On November 13, 2013, just prior to Plaintiff's administrative hearing, Dr. Duranceau also filled out a worksheet entitled "Physical Residual Functional Capacity Questionnaire."  (PageID.788–791.) On the completed worksheet, Dr. Duranceau opined that Plaintiff was incapable of even "low stress jobs". She could only sit for two hours at any one time and stand for one hour at any one time.  (PageID.789.) Plaintiff would need to be able to shift positions at will, and take unscheduled breaks once or twice a day. Plaintiff would need to rest for four hours before returning to work.  (PageID.790.)  Plaintiff could occasionally lift and carry ten pound weights, only rarely stoop, crouch, and climb stairs, and never climb ladders.  (PageID.790–91.)  Finally, Dr. Duranceau opined that Plaintiff could be expected to miss more than four days of work per month.  (PageID.791.)  In support of his opinion, Dr. Duranceau noted that Plaintiff's symptoms were pain, nausea, dizziness, and panic.  Plaintiff suffered from abdominal pain and

9

periumbilical aching.  She had "mild guarding on exam"[4] and a study of Plaintiff's pancreas demonstrated a congenital structural abnormality.  Finally, Dr. Duranceau noted that Plaintiff was taking morphine, which caused nausea and constipation.  (PageID.788.)

The ALJ gave no weight to Dr. Duranceau's opinions sent to the University of Phoenix, and only little weight to the doctor's November 2013 opinion.  (PageID.67.)  Plaintiff argues the ALJ failed to accord proper weight to these opinions.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov.7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of*

---

[4]Abdominal guarding is an involuntary response of the abdominal muscles suggesting abdominal inflamation. ROBERT S. PORTER & JUSTIN L. KAPLAN, MERCK MANUAL OF DIAGNOSIS AND THERAPY 108 (19th ed. 2011).

*Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376–77.

The ALJ first addressed the opinions Dr. Duranceau provided to the University of Phoenix. The ALJ recognized that these statements did not contain a function-by-function assessment and did not appear to be based on the social security disability standard:

> Jesse Duranceau, D.O., completed a number of University of Phoenix forms in which the doctor offered the opinion that the claimant was both temporarily and permanently disabled because of pancreatitis and degenerative spinal arthritis (Exhibit 21F). Of interest, in April 2013, Dr. Duranceau questioned whether the claimant met criteria for permanent disability with regard to the Social Security or Medicare programs (Exhibit 15F/4). In addition, the doctor did not provide a function-by-function assessment of the claimant's capacity and did not provide any medical findings in support of the opinion. The undersign, accordingly, affords no weight to the opinion expressed at Exhibit 21F.

(PageID.67.) The ALJ's decision in this regard is well supported and entirely consistent with applicable

11

law. Indeed, Dr. Duranceau's opinions here are little more than expressions that Plaintiff is disabled. Such opinions are not medical opinions that the ALJ was required to give controlling weight. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.")); *Buxton v. Halter*, 246 F.3d 762, 763 (6th Cir. 2001) (noting that while treating physicians' opinions may be entitled to great weight, the ALJ is not bound by conclusory statements regarding whether a person is legally disabled, especially if the ALJ's decision is well reasoned); *see also* 20 C.F.R. § 404.1527(d)(1)-(2) (noting that no special significance is given to medical opinions concluding a person is disabled, or opinions reserved to the Commissioner, such as the nature and severity of a person's impairments). Accordingly, the ALJ did not err in rejecting these opinions.

Regarding the doctor's completed questionnaire, the ALJ noted that:

> The doctor's assessment is not consistent with mild guarding and other clinical findings and objective signs identified in Exhibit 19F. Moreover, the assessment is inconsistent with the claimant's daily activities, course of treatment, and the objective medical findings cited by other treating medical sources. The undersigned gives, therefore, little weight to the assessment at Exhibit 19F.

(PageID.67.) As the ALJ noted, much of the record contains testing and treatment for her abdominal complaints. But such testing does not support the doctor's opinions.

The record shows that Plaintiff has been diagnosed with pancreatic divisum and has sought

12

treatment for associated abdominal pain.[5]  She has undergone sphincterotomies on the spincter of Oddi[6] with little relief.  (PageID.729.)  As the ALJ noted, however, studies have found normal pancreatic functioning.  (PageID.708.)  Imaging of Plaintiff's biliary system found normal results in the biliary ducts, gallbladder, and intestine.  (PageID.676, 806.)  An October 14, 2013, CT scan found that the pancreas was not inflamed.  (PageID.746.)  Plaintiff has taken medication for nausea which has helped.  (PageID.361, 453.)  The ALJ also noted that Plaintiff's daily activities were inconsistent with the extreme limitations provided by the doctor.  For example, Plaintiff reported being able to care for her special needs daughter.  She sometimes needed help dressing and bathing due to pain but was otherwise able to handle her personal care.  (PageID.275.)  She was able, for a time, to take online classes.  (PageID.110.)  Accordingly, the Court concludes the ALJ has provided good reasons, supported by substantial evidence, for giving less than controlling weight to Dr. Duranceau's opinion.

Accordingly, for all the above reasons, Plaintiff's claim of error is denied.

### 3.      The ALJ Properly Considered Plaintiff's Subjective Allegations.

At the hearing, Plaintiff alleged she was impaired to a far greater extent than that recognized by the ALJ.  She testified that she experienced pain when lifting weights similar to a gallon of milk.  (PageID.99.)  A typical day was spent lying down for half the day.  (PageID.101.)  She was unable to

---

[5]Pancreatic divisum is a congenital birth defect in which two pancreatic ducts fail to fuse during fetal development.  Symptoms of the condition include abdominal pain.  *Pancreas Divisum*, NAT'L PANCREAS FOUND., https://www.pancreasfoundation.org/patient-information/ailments-pancreas/pancreas-divisum/ (last visited Aug. 19, 2016).

[6]"The sphincter of Oddi refers to the smooth muscle that surrounds the end portion of the common bile duct and pancreatic duct. This muscle relaxes during a meal to allow bile and pancreatic juice to flow into the intestine." *Gastroenterology and Hepatology*, JOHNS HOPKINS MEDICINE, http://www.hopkinsmedicine.org/gastroenterology_hepatology/diseases_conditions/faqs/sphincter_oddi_dysfunction.html (last visited Aug. 19, 2016).

work because of her pancreas, dizzy spells, and hip problems. (PageID.85.) The ALJ found Plaintiff's statements to be "not entirely credible." (PageID.65.) Plaintiff claims the ALJ erred in discounting her credibility by failing to properly consider her daily activities and side effects from her medication, as well as in characterizing her treatment as conservative.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the

14

severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).

In his decision, the ALJ cited the factors he was required to consider in evaluating Plaintiff's credibility. (PageID.65.) These factors, found at 20 C.F.R. §§ 404.1529, 416.929, include: "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. §§ 404.1529(c), 416.929(c). Plaintiff's claim centers on the three factors of daily activities, side effects from medication, and treatment.

15

As an initial matter, as the above regulation makes clear, it was not in error for the ALJ to consider Plaintiff's daily activities against her statements. *See also Walters*, 127 F.3d at 532 (an ALJ may consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments). Here the ALJ properly noted that Plaintiff's testimony regarding the care for her daughter, ability to drive and shop, and watch television and use Facebook, did not support her complaints. (PageID.101, 117, 275, 278.) But even if the ALJ erred in referencing Plaintiff's daily activities, that is not the end of the analysis. The relevant question is whether substantial evidence supports the ALJ's decision, not whether the ALJ has rendered a perfect opinion. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (endorsing a harmless error analysis in credibility determinations when an ALJ's determination is based, in part, on invalid reasons). Here, the ALJ provided several other reasons, supported by substantial evidence, for finding Plaintiff's allegations to be not entirely credible. Plaintiff complained of continuing hip pain, but after undergoing surgery on both hips, physicians believed the pain to be connected to her pancreatitis rather than anything wrong with her hips. (PageID.529.) She had a normal range of motion and gait. (PageID.602, 752, 755.) She received injections into her hip to which she had a "dramatic response." (PageID.535.)  Regarding Plaintiff's abdominal complaints, the ALJ noted she had lost weight, but did not have cachexia.[7] (PageID.66, 756.) Plaintiff's nausea was able to be treated with medication. (PageID.361, 453.) Despite numerous stressors from her family, Plaintiff's anxiety and depression were stable. (PageID.697.) The ALJ properly recognized that all this was

---

[7]Cachexia is "a profound and marked state of constitutional disorder; general ill health and malnutrition." RICHARD SLOANE, THE SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY 105 (1987).

inconsistent with Plaintiff's allegations.  Accordingly, substantial evidence supports the ALJ's credibility decision.

Plaintiff argues, however, that the ALJ erred by failing to fully account for the side effects of her medication, and in characterizing her treatment as conservative. (PageID.66–67.) As noted above, the Commissioner will consider the "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Allegations of a medication's side effects must be supported by objective medical evidence. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665–66 (6th Cir. 2004) (where plaintiff testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians). Here, the ALJ considered possible medication side effects, noting Plaintiff "has alleged having incapacitating drowsiness and other symptoms with use of her medications" but finding that "there is no indication in the medical evidence that the claimant has had any significant medication side effects." (PageID.66.) Plaintiff's brief does not point to medical records which demonstrate that she addressed the alleged disabling side effect of drowsiness with her physicians.  Plaintiff instead relies on a statement from Dr. Duranceau that he suspected the primary cause of Plaintiff's complaints of abdominal pain with nausea was her opioid therapy. (PageID.682.) But as Plaintiff admits, she discontinued opioid therapy for a week without any change in symptoms. (PageID.775.)  Thus, the record does not support Plaintiff's claim that her opioid use caused her to experience abdominal pain.  Plaintiff also contends that it was in error for the ALJ to characterize Plaintiff's treatment as conservative. (PageID.66, 894.)  The record shows that the ALJ accurately described Plaintiff's treatment history in his opinion.  The ALJ

specifically discussed the hip procedures and testing that Plaintiff had undergone. (PageID.61–67.) While Plaintiff might disagree with the ALJ about what constitutes conservative treatment, "this does not mean [the ALJ] erred in assessing her credibility." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 417 (6th Cir. 2011). The Court finds no compelling reason to disturb the ALJ's credibility analysis. *See Smith*, 307 F.3d at 379.

      For all the above reasons, Plaintiff's claim of error is denied.


## CONCLUSION

      For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated:  August 29, 2016                       /s/ Paul L. Maloney
                                                   PAUL L. MALONEY
                                                   United States District Judge